UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF NEW YORK

CINDY ANN WINCHELL,

                Plaintiff,

   -against-                                                   5:12-CV-1606 (LEK)

CAROLYN W. COLVIN, acting
Commissioner of Social Security,

                Defendant.

## **MEMORANDUM-DECISION and ORDER**

### I. INTRODUCTION

Plaintiff Cindy A. Winchell ("Plaintiff") has appealed after the Social Security Administration ("SSA") denied final review of an Administrative Law Judge ("ALJ") decision denying her application for disability benefits. Dkt. No. 1 ("Complaint"). For the reasons discussed below, the decision is affirmed.

### II. BACKGROUND

#### A. Factual History

Plaintiff was born in 1959 and has a tenth-grade education. Dkt. No. 31 ("Record") at 27-29. Plaintiff first started working in 1977, but did not work from 1978 to 1994. R. at 87. She briefly worked again in 1995, 1996, and from 1999 to 2001. Id. At her job as a hand laborer at a paper company, where she worked intermittently from 1995 to 1999, Plaintiff sometimes carried objects weighing ten pounds. R. at 31. During her two-year employment at United Auto Supply from 1999 to 2001, Plaintiff drove a van and could lift up to twenty pounds a time. R. at 30. She quit due to back pain in March 2001. Id. From 2001 to 2006, the period for which Plaintiff is

claiming disability benefits, she was not employed. Id. Plaintiff has provided medical records covering the periods from 1985 to 1999 and from 2010 to 2011, but none from 2001 to 2006. R. at 151-334.

On January 16, 1993, Plaintiff injured her back while moving furniture and went to the emergency room at Community-General Hospital ("CGH") in Syracuse, New York. R. at 189. A lumbosacral spinal x-ray was normal. R. at 190. On March 17, 1993, Plaintiff started to visit a physical therapist at the Health Science Center ("HSC") of Syracuse, NY, and rated her pain level as a nine out of ten, especially when bending, sitting, and rising. R. at 155. Within a month, Plaintiff alleged that the leg and back pain had increased. R. at 163. Physical Therapist Curt DeWeese recommended that Plaintiff work on posture and exercise. Id. On April 4, 1993, Plaintiff self-reported her functional status as bedrest, a condition worsened from the previous ten visits to Mr. DeWeese. R. at 169. However, an x-ray result from May 10, 1993, was negative and showed no muscle strength loss. R. at 183. At that time, Plaintiff was also still able to drive to the hospital. Id.

The only other extant medical records from before 2001 are emergency treatment records from 1985 to 1998. R. at 171-98. Plaintiff received emergency treatment from CGH for a fractured toe, chest wall pain, soft tissue injury, and lower back pain. R. at 187-98. But x-ray reports revealed nothing abnormal in the chest, thoracic spine, lumbosacral spine, cervical spine, or ribs, and there is no follow up examination documented in the record. Id. Specifically, on May 16, 1995, Plaintiff visited CGH again for back pain and the record shows a history of minimally bulging disc. R. at 180. While no bone or joint abnormality was present from the subsequent x-ray exam, Relafen was given. R. at 180-81. On August 2, 1995, Plaintiff went to CGH again for a contusion above her left eye from a fall at work. R. at 178. Even though she sustained an injury on the left side of

2

her face, no neck or back pain resulted.  Id.  Plaintiff denied any problems with her eyes and she was treated with ice and Tylenol.  R. at 176.  On May 5, 1998, Plaintiff presented to CGH again for chest pain.  R. at 172.  The medical record shows that she was not in acute distress, though the "chest wall [was] slightly tender to palpation."  Id.  X-ray results showed clear lungs and no evidence of pneumonia or pulmonary edema.  R. at 173.

In 2010, Plaintiff again sought medical attention.  R. at 216.  On August 3, 2010, Plaintiff visited Port Byron Community Health ("PBCH") for a diabetes check and for back pain.  Id.  Physician Assistant Jessica Hoff ("Hoff") diagnosed Plaintiff with diabetes mellitus type II, hypertension, and back pain.[1]  Id.  On August 17, Plaintiff returned for a follow up with Hoff regarding back pain, and she was prescribed a muscle relaxant, Robaxin.  R. at 214.  During Plaintiff's next visit on September 21, 2010, Robaxin was stopped and Flexeril was prescribed instead.  R. at 212.  A magnetic resonance imaging ("MRI") examination from three days later showed minor degenerative bulging with no evidence of disc herniation at L5-S1, moderate facet hypertrophy with moderate right greater than left foraminal narrowing at L4-L5, and mild facet hypertrophy with foraminal narrowing.  R. at 219.  Physicians opined that there was no disc herniation or central spinal stenosis.  Id.

On November 30, 2010, Plaintiff returned to PBCH for elevated back pain.  R. at 254.  Hoff examined Plaintiff and diagnosed her with diabetes mellitus type II, hypertension, depressive order, and liver disorder.  R. at 254-55.  On December 16, 2010, Plaintiff visited CNY Gastroenterology

---

[1] The medical record of 2010 and disability benefit application show that Plaintiff developed type II diabetes in 1999.  R. at 19.  No original diagnosis exists in the record.  For 11 years between 1999 and 2010, Plaintiff was not on medication because she was not insured during that time.  R. at 216.

3

("CNY") for the results of a hepatic function test and an ultrasound. R. at 204. The record from that visit indicates that Plaintiff's past medical history includes: diabetes mellitus, arthritis, back pain, hypertension, and hemorrhoids. Id. During this visit, medical tests identified Transaminase elevation with a aspartate transaminase ("ALT") score of eighty four and an alanine transaminase ("AST") of sixty-three. Id. Three small lesions were also identified in the left lobe of Plaintiff's liver. Id. However, Plaintiff's test results for hepatitis were negative. Id. At the time of this visit, Plaintiff was taking Flexeril, metformin, Actos, paroxetine, and daily vitamins. Id. Plaintiff was diagnosed with transaminase elevation, diabetes mellitus with elevated hernoglobin Alc, obesity, "fatty liver infiltration, and three subcentimeter lesions in the left lobe." R. at 205. The potential complications were nonalcoholic steatohepatitis ("NASH"), diabetes, and obesity, which required further observation of Plaintiff's liver and dietary discipline to lose weight. Id.

On October 26, 2010, Plaintiff visited PBCH for an initial medical health evaluation regarding anxiety in public spaces arising out of her abusive childhood. R. at 210. Deborah Cole-Wenderlich, a licensed social worker, diagnosed Plaintiff with posttraumatic stress disorder ("PTSD") and panic disorder with agoraphobia, mild agoraphobia avoidance, and moderate panic. Id. For treatment, Cole-Wenderlich planned to confer with Plaintiff's primary care doctor regarding possible medication. Id. However, the Record does not include any future documentation about consultation with Plaintiff's primary care doctor.

From November 2010, to August 2011, Plaintiff visited Cole-Wenderlich fourteen times. R. at 225-59. On November 9, 2010, Plaintiff came back for side effects from Vistaril, an anti-anxiety drug. R. at 258. Cole-Wenderlich discussed anxiety issues with Plaintiff and assisted her in recognizing the source of her anxiety. R. at 254-58. At the time, Plaintiff was taking Metformin,

4

which treats type II diabetes, Naproxen, an anti-inflammatory drug for pain, Vistaril, and Paxil, a typical antidepressant drug. Id. On November 16, Plaintiff returned and worked with Ms. Cole-Wenderlich for more issues with past abuse memory. R. at 256. On this visit, Cole-Wenderlich only recommended Metformin and Paxil. Id. On December 28, Cole-Wenderlich and Plaintiff discussed Plaintiff's traumatic history and healthy behavior. R. at 252. Flexeril, Actos, a blood-sugar control drug, and Metoprolol Succinate, a blood pressure treatment drug, were added to the medication list. Id. On January 11, 2011, Plaintiff followed up with Cole-Wenderlich for family relationship issues. R. at 250. Plaintiff indicated a past history of abuse, and Ms. Cole-Wenderlich encouraged Plaintiff to talk with her husband about her feelings. Id. From February to August 2, 2011, the date of the last record, Plaintiff visited Cole-Wenderlich approximately twice a month for PTSD and other ongoing medical issues. R. 225-49. Cole-Wenderlich regularly encouraged Plaintiff to establish healthy relationships with family members. Id.

On January 27, 2011, Plaintiff returned to CNY for a follow-up visit. R. at 202. The computerized tomography ("CT") scan conducted on December 20, 2010, showed a cirrhotic liver with no apparent stigmata of liver disease or chronic liver disease. Id. The transaminase elevation result for Plaintiff decreased to a moderate level with an ALT of fifty seven and an AST of forty. Id. PA Mark Stever ("Stever") recommended upper endoscopy to ensure that there were no gastric antral vascular ectasia ("GAVE") or esophageal varices. On April 21, 2011, Plaintiff came back for a follow-up on transaminase elevation. R. at 199. Stever found that further complete blood count ("CBC") and coagulation studies did not suggest cirrhosis. Id. The liver function test ("LFT") result from April 18 also appeared normal within the reference range with an ALT of sixty eight and AST of thirty seven. Id. While Stever ruled out the possibility of autoimmune disease, metabolic

liver disease, and hepatitis, Plaintiff's long history of diabetes and obesity indicated a a presumptive diagnosis of NASH. Id. The LFT showed normal range of transaminase, and coagulopathy (bleeding disease) was also excluded based on laboratory results. R. at 200. Stever again recommended dietary discipline and diabetes control measures. Id. Plaintiff was scheduled to undergo an upper endoscopy to rule out the possibility of GAVE. R. at 201.

### B. Procedural History

Plaintiff filed a Title II application for disability insurance benefits, alleging disability starting March 15, 2001. R. at 15. The claim was first denied by the SSA on July 21, 2010. Id. Plaintiff then requested a hearing on September 9, 2010, which was held in Rochester, NY, on August 17, 2011. Id. ALJ Gregui J. Mercado denied Plaintiff's claim on August 19, 2011. R. at 19. Plaintiff's subsequent request for review by the Appeals Council was denied on July 23, 2012. R. at 1. Plaintiff now appeals the final decision of the ALJ.

## III. STANDARD OF REVIEW

### A. Scope of Review

In reviewing a denial of a social security benefits claim, a court limits its review to whether the ALJ's decision is supported by substantial evidence in the record. Gladle v. Colvin, No. 11-CV-0991, 2013 WL 5503687, at *4 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.). Unless the ALJ's decision is "based upon legal error or insubstantial evidence," the reviewing court must affirm the ALJ's decision. Id. Substantial evidence requires "more than a scintilla" and has to support the conclusion drawn by the ALJ. Fallon v. Colvin. No. 11-CV-1339, 2014 WL 61244, at *5 (N.D.N.Y. Jan. 8, 2014) (Kahn, J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). The reviewing court cannot make *de novo* factual findings, and even if substantial evidence may

support a contrary finding, "the Court must afford the ALJ's determination considerable deference." Gladle, 2013 WL 5503687, at *4.

### B. Social Security Disability Benefits

To qualify for disability insurance benefits, an applicant must be disabled under the statutory guidelines of the Social Security Act. Shaw v. Charter, 221 F.3d 126, 131 (2d Cir. 2000). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (citing 42 U.S.C. § 423(d)(1)(A)). In addition, "[t]he definition of 'disabled' is the same for purposes of receiving SSD [Title II] and SSI [Title XVI] benefits." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (comparing 42 U.S.C. § 423(d) with 42 U.S.C. § 1382c(a)).

The SSA employs a five-step analysis to evaluate whether an applicant is disabled. 20 C.F.R. § 404.1520(a)(1). This evaluation is sequential—if the applicant is found disabled or not disabled at any step, the analysis ends. Shaw, 221 F.3d at 131.

First, the SSA determines whether the applicant is currently working; if the applicant's work activity is a substantial gainful activity, then the applicant is found not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, the SSA considers whether there are severe medical impairments that satisfy the duration requirement. Id. § 404.1520(a)(4)(ii). Third, the SSA determines whether the impairment meets or equals one of the listings in the Appendix. Id. § 404.1520(a)(4)(iii). Fourth, the SSA considers the residual functional capacity ("RFC") of the applicant and whether she can still do relevant past work. Id. § 404.1520(a)(4)(iv). If the applicant can still perform relevant work, then the SSA will find her not disabled. Id.

7

The applicant bears the burden of proof at the previous four steps; however, at the fifth and the last step, the SSA bears the burden of showing that the applicant is capable of doing other work. Ortiz Torres v. Colvin, 939 F. Supp. 2d 172, 180 (N.D.N.Y. 2013). If the applicant cannot adjust to other work, then she will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## IV. DISCUSSION

The ALJ made three findings regarding Plaintiff's claim: (1) the last date Plaintiff met the insured status requirement was June 30, 2006; (2) Plaintiff did not engage in substantial gainful activity during the claimed period from March 15, 2001, to June 30, 2006; and (3) there was no medical record during this period to support the existence of a medically determinable impairment. R. at 17. Based on these three findings, the ALJ found Plaintiff not disabled because there was no evidence of disability during the relevant period. R. at 19.

Plaintiff challenges the ALJ's decision on two grounds. Dkt. No. 33 ("Plaintiff's Brief") at 4-8. First, Plaintiff argues that the ALJ erred in not considering Plaintiff's Title XVI, Supplemental Security Income ("SSI"), and Title XVIII, Medicare benefits claims. Id. at 4. Second, Plaintiff argues that the ALJ failed to fully develop the record, to properly weigh the evidence in the record, consider the objective medical evidence, and/or give full credibility to Plaintiff's subjective testimony. Id. at 5-8. Defendant responds that the ALJ "properly evaluated the claims, fully developed the record, and Plaintiff lacked the medical evidence to substantiate her claim." Dkt. No. 36 ("Defendant's Brief") at 4.

### A. Title II, Title XVI, and Title XVIII Claims

Plaintiff claims that she applied for benefits under Title II, Title XVI, and Title XVIII. Pl.'s Br. at 4. Plaintiff argues that the ALJ's refusal to evaluate Plaintiff's Title XVI and Title XVIII

8

claims was improper. Id. However, the Court finds that the SSA was not obligated to consider those claims because they were not filed.

In her application for Title II disability insurance benefits, Plaintiff indicated that she "ha[d] filed or intend[ed] to file for SSI [Title XVI]." R. at 86. However, besides Plaintiff's statements, there is no SSI application in the Record and Plaintiff did not stipulate that she had filed one prior to this lawsuit. "In addition to meeting other requirements, [a claimant] must file an application to become eligible to receive [SSI] benefits." 20 C.F.R. § 416.305(a); see also Brunetti v. Massanari, 24 F. Appx 19, 20 (2d Cir. 2001) (finding appellant's oral inquiry into SSI benefit did not constitute an application and without a written application, appellant was not entitled to SSI); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (holding that without an actual application, the ALJ did not err in disregarding plaintiff's Title XVI benefit when plaintiff only indicated in his Title II application that he had filed or intended to file for Title XVI benefits). Given the lack of evidence of an actual application in the Record, the ALJ did not err in failing to consider Plaintiff's Title XVI claim.

Similar to Plaintiff's Title XVI claim, her Title XVIII (Medicare) claim also cannot be reviewed because no application was filed. Although the SSA has full authority to make an initial determination, reconsideration, and appellate review of an applicant's Medicare claim, see 42 C.F.R. § 405.904(a)(1), any initial determination of eligibility of a Medicare claim requires an application, id. ("The SSA makes an initial determination on *an application* for Medicare benefits and/or entitlement of an individual to receive Medicare benefits.") (emphasis added). "The entitlement sections of the [Social Security] Act specify the filing of an application as a prerequisite to entitlement, so a court could not in any event award benefits absent an application." Heckler v.

Ringer, 466 U.S. 602, 634 (1984) (Stevens, J., concurring in the judgment) (citing Weinberger v. Salfi, 422 U.S. 749, 759 n.6 (1975)). Plaintiff argues that when her counsel made his first appearance, all three boxes on the application forms for Title II, Title XVI, and Title XVIII claims were checked. Pl.'s Br. at 5; R. at 83. However, Plaintiff did not file an amended application; therefore, the Court cannot consider those claims.

**B. ALJ's Duty to Fully Develop the Record**

*1. Weighing the Evidence and Consideration of Objective Medical Evidence*

Even assuming *arguendo* that Plaintiff had filed a proper application, she still would not be entitled to benefits because there was insufficient evidence to establish disability. In general, the ALJ has a duty to fully develop the record. See Perez, 77 F.3d 41 at 47; see also 20 C.F.R. § 404.1512(d). However, a plaintiff bears the burden of furnishing medical evidence:

> In general, [the claimant] ha[s] to prove to [the SSA] that [the claimant] [is] blind or disabled . . . This means that [the claimant] must furnish medical and other evidence that [the SSA] can use to reach conclusions about [the claimant's] medical impairment(s) and, if material to the determination of whether [the claimant] is disabled, its effect on [the claimant's] ability to work on a sustained basis.

Id. § 404.1512(a)-(c). The plaintiff is responsible for producing evidence and the ALJ has to properly consider all the evidence in the record. Id. §§ 404.704; 404.1512. "However, the absence of contemporaneous medical records does not preclude a claimant from otherwise demonstrating that he was disabled." Martinez v. Barnhart, 262 F. Supp. 2d 40, 45 (W.D.N.Y. 2003). Under Social Security Ruling ("SSR") 83-20, where the precise onset date of the disability cannot be established, it may be necessary to infer the onset date and the "disabling level" from the available evidence. Titles II & XVI: Onset of Disability, 1983-1991 Soc. Sec. Rep. Serv. 49 (S.S.A. 1983). Where medical evidence is not available, documentation or testimonies from medical experts,

family members, and friends can used as additional evidence regarding claimant's condition. Id.; see also Baladi v. Barnhart, 33 F. Appx 562, 564 (2d Cir. 2002) ("SSR 83–20 is inapplicable to the decision under review, because the ALJ's determination that plaintiff was not disabled obviated the duty under SSR 83–20 to determine an onset date.").

In order to find a claimant disabled, the claimant must establish the existence of a severe impairment, defined as a condition that significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. When multiple impairments are alleged, their aggregate effect must be considered even if, considered separately, none would be severe. Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *11 (N.D.N.Y. Sept. 9, 2008), aff'd, 337 F. App'x 87 (2d Cir. 2009) (citing 20 C.F.R. §§ 404.1523; 416.923). The ALJ also has the duty to consider both the objective medical evidence and the claimant's subjective statement:

> Severity of impairment should be evaluated with reference not only to objective medical evidence, but also to other factors found in the record, including: the plaintiff's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medication; other treatments sought for relief of pain or symptoms; other measures taken by the plaintiff to relieve symptoms; and any other factors causing functional limitations and restrictions due to pain or other symptoms.

Fallon, 2014 WL 61244, at *6 (citing 20 C.F.R. §§ 404.929(c)(3)(i)-(vii), 404.1529(c)(3)(i)-(vii)).

Substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment between 2001 and 2006. The ALJ found that Plaintiff was able to drive to the store, had no problem taking care of herself at home, and did chores around the house. R. at 18. The ALJ also reviewed the medical evidence before and after the claimed period. Id. The ALJ noted the x-ray reports from 1994 and 1995, which suggested that her cervical and lumbosacral spine were normal. R. at 18, 190-91. Other medical reports corroborate the ALJ's finding that the record does not

11

suggest any severe impairment. See, e.g., R. at 179 (x-ray report noting normal bony structure, paranasal sinuses and overlapping soft tissues after Plaintiff fell from work); R. at 173 (x-ray report noting clear lungs, no evidence of pneumonia or pulmonary edema, and normal bone structure). Although the ALJ did not mention a 1993 physical therapy report, which assessed Plaintiff as having "moderate to major loss of trunk flexion and extension, minimal loss of side gliding," R. at 155, the existence of some medical evidence to support the Plaintiff's position does not change that the ALJ's decision was supported by substantial evidence, see Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). This principle rings even truer where that medical evidence is from eight years before the claimed period. In addition, the ALJ's review of pre-2001 evidence is substantiated by the fact that Plaintiff worked from 1999 to 2001, the period after the aforementioned examinations. R. at 87.

Neither can Plaintiff establish an impairment solely through her own statements of her symptoms. 20 C.F.R. § 404.1508. A claimant needs medical findings/evidence, "shown by medically acceptable clinical diagnostic techniques," and laboratory findings, "shown by the use of medically acceptable laboratory diagnostic techniques." Id. § 404.1528. "When there is no medically determinable impairment [attested by medical signs or laboratory findings] . . . the application must be denied at step 2." Swainbank v. Astrue, No. 06-CV-248, 2008 WL 731302, at *1 (D. Vt. Mar. 18, 2008) aff'd, 356 F. App'x 545 (2d Cir. 2009) (citing SSR 96-4p). The Court agrees with the ALJ's finding that during the hearing, "Plaintiff readily admit[ted] that no medical evidence exists" for that period, Def.'s Br. at 7, and there are no other medical records to suggest that Plaintiff had a severe impairment between 2001 and 2006, as discussed *supra*. The ALJ gave due consideration to the period where Plaintiff failed to provide medical documentation. R. at 18-

19. Specifically, the ALJ noted that Plaintiff was taking over-the-counter drug for back pain, had not been on medication for diabetes for eleven years, and "was never hospitalized, nor did [Plaintiff] receive emergency room treatment for any other of [her] conditions." R. at 18. Accordingly, the ALJ correctly rejected Plaintiff's argument that a severe impairment existed based upon her accounts of her symptoms.

Regarding medical records after 2010, the ALJ recognized that Plaintiff was assessed with diabetes mellitus, hypertension, back pain, and PTSD. Id. The ALJ also found that the new MRI scan of Plaintiff's lumbar spine showed "no disc herniation or central spine stenosis." R. at 19, 219. Although an MRI scan also suggests minor degenerative disc bulging, Hoff found that Plaintiff was not in acute distress. R. at 219,280. Similarly, Cole-Wenderlich, who treated Plaintiff for PTSD and anxiety issues, did not find any limitation on Plaintiff's ability to work. R. at 225-59. Even in or after 2010, none of the medical reports suggest any limitation on Plaintiff's ability to work that would give rise to a finding of severe impairment. Id.

Plaintiff's claim also fails because of the lack of "acceptable medical sources." Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment, SSR 06-03P (S.S.A. Aug. 9, 2006). The majority of the record is comprised of consultation reports issued by a licensed social worker and physician's assistants. Id. Although SSR 06-03p requires the ALJ to take those "other source" opinions into consideration, these reports would not provide sufficient evidence to establish a severe impairment. Id.; see also 20 C.F.R. § 416.913. For example, "in cases involving agoraphobia and other phobic disorders, panic disorders, and posttraumatic stress disorders, documentation of the anxiety reaction is essential. At

least one detailed description of [the claimant's] typical reaction is required." 20 C.F.R. § 404 App. 1 § 12.00(D)(1). Additionally, mental impairments require specific medical evidence to establish the impairment's presence, determine the degree of functional limitation, and estimate of the duration of the impairment. Id. § 404 App. 1(12.00)(D). Although Cole-Wenderlich saw Plaintiff over a dozen times, none of her reports contain a detailed description of Plaintiff's PTSD reaction, or a description of the duration and limiting degree of Plaintiff's anxiety. R. 225-259. With such incomplete and inconclusive evidence in the record, the ALJ did not err in finding Plaintiff not disabled.

### 2. Consideration of Subjective Evidence

Plaintiff also argues that the ALJ failed to explicitly state the reasons for discrediting her allegations of pain. Pl.'s Br. at 7. However, Plaintiff's argument is without merit. "An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the [c]ourt to glean the rationale of an ALJ's decision." Sickles v. Colvin, No. 12-CV-774, 2014 WL 795978, at *20 (N.D.N.Y. Feb. 27, 2014) (internal citation omitted). The Second Circuit has stated that "an individual's statement as to pain and or other symptoms shall not alone be conclusive evidence of disability," Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006), and although the ALJ is required to consider Plaintiff's subjective statements, the ALJ is not obliged to accept them as true, but can weigh them against all the other evidence in the record, McCreery v. Comm'r of Soc. Sec., 13-CIV-3254, 2014 WL 3377099, at *9 (S.D.N.Y. July 9, 2014) (citing Genier v. Astrue, 606 F.3d 46, 69 (2d Cir. 2010)). Here, the medical records do not suggest any severe impairment or limitation on Plaintiff's ability to engage in basic work activities. Without any objective medical evidence to support Plaintiff's

symptoms, the ALJ was not required to find a severe impairment based only on the subjective evidence in the record.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that the Commissioner's decision denying disability benefits is **AFFIRMED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**

DATED: August 28, 2014
Albany, New York

Lawrence E. Kahn
U.S. District Judge